UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
JAVIER CESARIO and )
FERNANDO MARTINEZ, )
          )
      Plaintiffs, )
          )
    v. )   **DECLARATION OF**
          )   **KERIN E. COUGHLIN**
BNI CONSTRUCTION, INC., )
MIKIAL ABDUR-RAHIM and )
MUSA LAST NAME UNKNOWN, )
          )
      Defendants. )
          )
------------------------------------------------------------x

   I, KERIN E. COUGHLIN, subscribe as true under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

   1.  I am an attorney with Constantine Cannon LLP, attorneys for plaintiffs Javier Cesario and Fernando Martinez in the above-captioned matter. I have personal knowledge of the facts set forth herein.

   2.  I submit this declaration in support of plaintiffs' request for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against defendants and the Proposed Findings of Fact and Conclusions of Law concerning damages and other relief that plaintiffs submit in support of that request.

## **DEFENDANTS' DEFAULT**

   3.  On October 2, 2007, plaintiffs commenced this action by filing a Complaint against Defendants seeking, *inter alia*, compensatory damages, liquidated damages and attorneys' fees and costs for violations of the Fair Labor Standards Act, the

102130.1

New York State Labor Law, and New York contract and *quantum meruit* law. A copy of the Complaint is attached hereto as Exhibit A and appears at Docket No. 1 in this matter.

4.    Defendants were served with the Complaint in this matter on October 25, October 30, and December 28, 2007, respectively. A true and correct copy of the February 7, 2008 Declaration of Kerin E. Coughlin in Support of Plaintiffs' Request to Enter Default pursuant to Federal Rule of Civil Procedure 55(a) is attached hereto as Exhibit B and appears at Docket No. 11 in this matter. That declaration sets forth the facts surrounding service on defendants.

5.    Defendants failed to plead or otherwise respond to the Complaint. Accordingly, on February 13, 2008, the Clerk of this Court entered a default against defendants pursuant to Federal Rule of Civil Procedure 55(a). A true and correct copy of the executed Certificate of Default is attached hereto as Exhibit C and appears at Docket No. 12 in this case.

6.    To date, defendants still have failed to plead or otherwise respond to the Complaint. Accordingly, plaintiffs now respectfully request that the Court enter default judgment against defendants pursuant to Federal Rule of Civil Procedure 55(b)(2) and award plaintiffs the unpaid wages, overtime, spread of hours pay and other amounts that they are owed, as well as attorneys' fees and costs, as set forth herein and in the other papers submitted in support of this request, along with such other and further relief as the Court may deem just and proper.

## DAMAGES CALCULATION

7.    Plaintiffs respectfully seek an award of the monetary damages to which they are entitled under the laws pursuant to which they bring this suit. Submitted

herewith as Exhibit D are true and correct copies of charts prepared by counsel reflecting the damages calculations for each of the plaintiffs.

8.   Each chart is separated into two parts. The upper part of each chart reflects the first 12 weeks of plaintiffs' employment, May 7 - July 30, 2006, during which plaintiffs performed only the "primary work," from about 7am until 4pm on weekdays and on most weekend days. The lower part of each chart reflects the latter 20 weeks of plaintiffs' employment, August 1 - December 20, 2006, during which plaintiffs performed the primary work from about 7am until 4pm on weekdays, followed by the "additional work" after 4pm on weekdays and on most weekend days. *See* Compl. ¶¶ 18-26.

9.   Each part of the chart is further broken down into "groups" of weeks within each period during which the plaintiffs worked 5, 6 or 7 days (noted as the "days per week" column), and a certain number of hours (the "hours per week" column). I.e., the upper part of each chart, which reflects the first 12 weeks of employment (during which plaintiffs performed only the primary work) reflects that (a) for five weeks, plaintiffs worked 7 days for a total of 50 hours each week, (b) for four weeks, plaintiffs worked six days for a total of 45 hours each week, and (c) for three weeks, plaintiffs worked five days and a total of 40 hours each week. Likewise, the lower part of each chart, which reflects the latter 20 weeks of plaintiffs' employment (during which plaintiffs performed both the primary and the additional work), shows that (a) for five weeks (two weeks between August 1 and November 28, and three weeks between November 29 and December 20), plaintiffs worked seven days and a total of 69.5 hours

per week, (b) for 12 weeks, plaintiffs worked six days and a total of 64 hours per week, and (c) for three weeks, plaintiffs worked five days and a total of 58 hours per week.

10. The "promised daily rate" column in the upper part of each chart (reflecting the first 12 weeks of plaintiffs' employment) reflects the $130 per day that plaintiffs were promised for the primary work. *See* Compl. ¶ 20.

11. The "promised weekly rate" column that appears in the lower part of each chart reflects that, for plaintiffs' work during the latter 20 weeks of their employment, plaintiffs were promised a weekly rate of $1,117.50. That figure represents (a) the $130 per day that plaintiffs were promised for the primary work, which they continued to perform on each weekday during those latter 20 weeks, plus (b) one-quarter of the $37,400 in fixed fees that each plaintiff was promised for the additional work ($9,350.00 each) divided by 20 weeks, for $467.50 per week. So, in each of the latter 20 weeks of their employment, plaintiffs earned (a) for their primary work, $130 per day times 5 days, or $650 per week, plus (b) for their additional work, $467.50 per week, for a total of $1,117.50 per week.

12. The "Reg Hours" column reflects the first 40 hours that plaintiffs worked in each week, for which they were entitled to their regular hourly rate.

13. The "OT Hours" column reflects the number of hours that plaintiffs worked in each week beyond the 40 regular hours, thus for which plaintiffs should have been paid the statutory time-and-one-half overtime rate.

14. The "Days w/ > 10 hrs" column reflects the number of days in each week on which plaintiffs worked more than 10 hours, thus for which plaintiffs should have been paid the statutory "spread of hours" payment of one hour's pay at the 2006

minimum hourly wage rate of $6.75 (the "NYLL Minimum Wage" column). *See* 12 NYCRR §§ 142-2.1, 142-2.4.

15.    The "hourly rate" column reflects plaintiffs' hourly rate of pay in each given week, which varied depending on the number of hours that plaintiffs worked in that week and the amount of money that they had been promised for that week. It is calculated as follows: [the amount that plaintiffs were promised for that week] divided by [the number of hours that plaintiffs worked in that week]. So, for example, during the first 12 weeks of plaintiffs' employment (the upper part of the chart), for each of the 5 weeks that plaintiffs worked 7 days / 50 hours performing only the primary work, plaintiffs' hourly rate was: [$130 per day times 7 days, or $910 for the week] divided by [50 hours worked] = $18.20 per hour. Likewise, during the latter 20 weeks of plaintiffs' employment (shown in the lower part of the chart), for each of the 5 weeks that plaintiffs worked 7 days / 69.5 hours performing both the primary work and the secondary work (2 weeks between August 1 and November 28, plus 3 weeks between November 29 and December 20), plaintiffs' hourly rate was: [$1,117.50 promised per week] divided by [50 hours worked] = $16.08 per hour.

15.    The "overtime rate" column reflects the minimum time-and-a-half rate that plaintiffs should have been paid for hours worked over 40 in a given week. It is calculated by multiplying the hourly rate for that week times 1.5. So, for example, for the 5 weeks during the first 12 weeks of employment in which plaintiffs worked 50 hours, the overtime rate would be the hourly rate of $18.20 times 1.5, or $27.30. Likewise, for the 5 weeks during the latter 20 weeks of employment in which plaintiffs worked 50 hours, the overtime rate was the hourly rate of $16.08 times 1.5, or $24.12.

16. The "regular wages earned each week" column reflects the amount that plaintiffs should have been paid for the first 40 hours that they worked in a given week (the "Reg Hours"). It is calculated by multiplying the hourly rate for that given week by the 40 regular hours that they worked.

17. The "OT earned each week" column reflects the amount that plaintiffs should have been paid for hours in excess of 40 that they worked in a given week (the "OT Hours"). It is calculated by multiplying the number of overtime hours in excess of 40 by the overtime rate for that week.

18. The "spread of hours earned each week" column reflects the amount of "spread of hours" payments of one hour's pay at the then-applicable statutory minimum wage rate that plaintiffs should have been paid in a given week. It is calculated by multiplying the number of days in that week on which plaintiffs worked more than 10 hours ("Days w/ > 10 hrs") by the 2006 minimum wage of $6.25 per hour ("NYLL Minimum Wage").

19. "Total wages earned each week" reflects the total regular wages, overtime, and spread of hours payments that plaintiffs should have been paid each week. For example, for the 5 weeks during the first 12 weeks of employment in which plaintiffs worked 50 hours, plaintiffs should have been paid $728.00 in regular wages (straight hourly rate) plus $273.00 in overtime plus $0.00 in spread of hours payments, for total wages of $1,001.00. Likewise, for the 5 weeks during the latter 20 weeks of employment in which plaintiffs worked 50 hours per week, plaintiffs should have been paid $643.17 in regular wages plus $711.50 in overtime plus $33.75 in spread of hours payments, for total wages of $1,388.42.

20. The "wages received" ("wages rec'd") column reflects the amount that plaintiffs did receive for their work, primary and/or additional, in each given week.

21. The "total unpaid wages each week" column reflects the difference between the "wages earned each week" and the "wages received" that week. For example, for the 5 weeks during the first 12 weeks of employment that plaintiffs worked 50 hours per week, plaintiffs' total unpaid wages are $1,001.00 (earned) minus $910.00 (received), or $91.00 (unpaid).

22. "Total unpaid wages" is the amount that defendants failed to pay plaintiffs for each entire "group" of weeks in which plaintiffs worked a given number of days and hours. It is calculated by multiplying the "total unpaid wages each week" by the number of weeks contained in that "group." For example, for the entire 5-week "group" during the first 12 weeks of employment, in which plaintiffs worked 50 hours per week, plaintiffs' total unpaid wages are $91.00 times five weeks, or $455.00.

23. "Total FLSA liquidated damages" is the amount of liquidated damages to which plaintiffs are entitled under the FLSA, 29 U.S.C. § 216(b). The FLSA provides for liquidated damages equal to the "unpaid overtime compensation." *Id.* The FLSA defines "overtime compensation" as "*not less than* one and one-half times the regular rate." 29 U.S.C. § 207(a) (emphasis added). Where, as here, defendants have defaulted on a complaint under the FLSA for unpaid overtime, the Court may draw all reasonable inferences in plaintiffs' favor. *See Boyke v. Super. Credit Corp.*, No. 01-CV-0290, 2006 WL 3833544, at *6 (N.D.N.Y. Dec. 28, 2006), it is assumed that *all* of plaintiffs' "unpaid wages" (except those to which plaintiffs are entitled solely under the New York Law, i.e., spread of hours pay and the last three weeks' pay) was intended as "overtime

102130.1

compensation" in calculating plaintiffs' FLSA liquidated damages. *See id.* (where employer had defaulted, court awarded FLSA liquidated damages to plaintiff based on her "estimates of . . . the overtime wages she earned but were not paid" because, when a defendant fails to produce records, "courts should not hesitate to award damages based on the just and reasonable inference from the evidence presented") (quotation omitted). Accordingly, for each "group" of weeks in which plaintiffs worked a given number of days / hours (except for the last three weeks, when plaintiffs received nothing at all), FLSA liquidated damages are calculated as: [total unpaid wages each week] minus [spread of hours earned each week] times [number of weeks in the "group"]. For example, for the 12 weeks during the latter 20 weeks of plaintiffs' employment, when the plaintiffs worked 64 hours per week, plaintiffs' FLSA liquidated damages are [total unpaid wages each week of $489.08] minus [spread of hours each week of $33.75] times [12 weeks], or $5,463.96.

24.     "NYS liquidated damages" is the amount of liquidated damages to which plaintiffs are entitled under the New York Labor Law, N.Y. Labor Law § 663(1). The New York Labor Law permits "liquidated damages equal to twenty-five percent of the total" amount owed under that law where such underpayments were willful. *Id.* Here, NYS liquidated damages are assessed on the amounts that plaintiffs are owed solely under New York law -- i.e., spread of hours payments and the amounts they did not receive for their last three weeks of work for defendants.

25.     As the charts demonstrate, plaintiff Javier Cesario is entitled to the following amounts (not including interest): for unpaid wages, unpaid overtime, and

unpaid spread of hours pay: $13,184.86; plus total liquidated damages: $9,360.61; for a total of **$22,815.47**.

26. As the charts also demonstrate, plaintiff Fernando Martinez is entitled to the following amounts (not including interest): for unpaid wages, unpaid overtime, and unpaid spread of hours pay: $13,988.11; plus total liquidated damages: $10,433.86; for a total of **$24,421.97**.

27. In total, plaintiffs are entitled to **$47,237.44** (not including interest).

28. By claim for relief, plaintiffs are entitled to the following (including liquidated damages as applicable):

| | | |
|---|---|---|
| I & II | Unpaid Overtime: | $35,389.94 |
| III | Unpaid Spread of Hours Payments: | $1,687.50 |
| IV | Unpaid Wages: | $10,413.15 |
| V | Breach of Contract: | $16,250.00 |
| VI | *Quantum Meruit*: | $16,250.00 |

## ATTORNEYS' FEES AND COSTS

29. Plaintiffs seek an award of their attorneys' fees and costs incurred in bringing this lawsuit as provided under the FLSA, 29 U.S.C. § 216(b), and the New York Labor Law, N.Y. Labor Law § 663(1).

30. Plaintiffs are represented in this matter by Constantine Cannon LLP and the New York Legal Assistance Group. Submitted herewith as Exhibit E are true and correct copies of summaries of contemporaneous time records reflecting work performed in connection with this matter by individuals at each of those organizations.

31. I have over four years' experience in civil litigation since being admitted. I also have one (1) year of experience as a clerk to a United States Magistrate Judge. My billing rate for this matter was $335 per hour during 2007 and $375 per hour during 2008. I have billed 104 hours to this matter for a total fee of $36,630.00.

32. Elena S. Goldstein, Esq. of the New York Legal Assistance Group also has four years of legal experience since being admitted. In addition, Ms. Goldstein has one year of experience as a clerk to a United States District Judge and one year of experience as a clerk to a Second Circuit Court of Appeals Judge. Ms. Goldstein's billing rate for this matter is $350 per hour. She has billed 34.07 hours to this matter, for a total fee of $10,160.50.

33. Laura Fentonmiller, Esq., formerly of Constantine Cannon, had over 10 years of legal experience when she worked on this matter. Ms. Fentonmiller's billing rate was $350 per hour. She billed 12.25 hours to this matter, for a total fee of $4,287.50.

34. Jeremy Murphy, a Constantine Cannon paralegal, has six years of experience as a civil litigation paralegal, including his two years with Constantine Cannon. Mr. Murphy's billing rate for this matter was $125 per hour in 2007 and $160 per hour in 2008. He has billed 22.5 hours to this matter, many of which were spent attempting to effect service on defendants, for a total fee of $3,013.53.

35. The costs and expenses incurred in the prosecution of this matter are set forth in the summary prepared by my firm, a true and correct copy of which is submitted herewith as Exhibit F. They total $2,322,53.

36. I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 11, 2008
       New York, New York

_____
KERIN E. COUGHLIN