UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAVIER CESARIO and<br>FERNANDO MARTINEZ,<br><br>                 Plaintiffs,<br>v.<br><br>BNI CONSTRUCTION, INC.,<br>MIKIAL ABDUR-RAHIM and<br>MUSA LAST NAME UNKNOWN,<br><br>                 Defendants. | Civ. No. 07 Civ. 8545 (LLS) (GWG)<br><br>**DECLARATION OF<br>FERNANDO MARTINEZ** |

      I, **FERNANDO MARTINEZ**, subscribe as true under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a plaintiff in the above-captioned case. I make this declaration in support of my application for an Order granting me a default judgment against defendants and awarding me unpaid wages, overtime compensation and other amounts, as well as liquidated damages, pre-judgment interest, and attorneys' fees and costs. I have personal knowledge of the facts set forth herein.

2. I reside in the Bronx, New York.

3. I filed a Complaint in this Court against my former employers, BNI Construction, Inc., Mikial Abdur-Rahim, and Musa, because they did not pay me all of the wages that I was owed, and they never paid me overtime compensation or spread of hours payments pursuant to the Fair Labor Standards Act and New York Labor Law.

4. On or about May 7, 2006, I began working for the defendants at a business construction site located at 15 West 116th Street, New York, New York.

107591.1

- 2 -

5. During the first twelve weeks of my employment with defendants, from May 7 until about July 30, 2006, I worked from about 7 a.m. until 4 p.m. every weekday (Monday through Friday) performing my "primary work" of various simple construction tasks, such as interior framing and installing drop ceilings and sheetrock. I took a half-hour break for lunch each day.

6. During this twelve-week period, I also sometimes performed the primary work on weekend days. I performed the primary work on about nine Saturdays (75% of the Saturdays during those weeks) and five Sundays (40% of the Sundays during those weeks), for about five hours each weekend day. In practice, because I only worked on a Sunday if I had also worked on the immediately preceding Saturday, during this twelve-week period, I worked seven days a week for five of the weeks, six days a week for four of the weeks, and five days a week for three of the weeks.

7. Javier Cesario worked with me, doing the same type of work for the defendants. We worked identical schedules during the entire time that I was employed by the defendants.

8. During the first twelve weeks of my employment by the defendants, I was paid $130.00 for each day that I worked at the construction site.

9. The defendants never discussed with me overtime compensation or any extra payment for working more than 40 hours in a single week.

10. The defendants never paid me overtime compensation or any extra payment for working more than 40 hours in a single week.

11. Beginning around August 1, 2006, the defendants offered to pay me and three other workers (including Javier Cesario) a fixed fee of about $37,400.00 (to be divided

equally among the four of us) for performing some "additional work" that was similar to our primary work at the same construction site on the weekends and in the evenings.

12. Thereafter, my schedule (and that of Mr. Cesario) changed somewhat. From August 1, 2006 until around December 20, 2006, I continued to perform my normal, "primary" work on weekdays from about 7 a.m. until 4 p.m. (with a half-hour break for lunch). However, after August 1, on weekdays I would work an average of 3.5 extra hours each evening performing the additional work. I would often go to work on weekends to perform the additional work as well.

13. During this August through December period (a total of 20 weeks), I worked on about 17 Saturdays (about 85% of the Saturdays) and on about five Sundays. I only worked on a Sunday if I had also worked on the immediately previous Saturday; that is, I never worked a Sunday without working the Saturday right before it. Therefore, during this 20-week period, I worked seven days a week for five of the weeks, six days a week for twelve of the weeks, and five days a week for three of the weeks.

14. I, along with the three other workers, performed the tasks involved in the additional work, for which defendants promised to pay us.

15. I was supposed to receive 25% of the $37,400 that the defendants promised to pay us for our additional work, or $9,350.00. Since I spent 20 weeks performing the additional work, I should have received approximately $467.50 each week in addition to the $130.00 I received for each weekday on which I performed the 7 a.m. to 4p.m. primary work ($650.00 per week).

16. The defendants never paid me most of the money that I was owed for this additional work. Two other workers (who are not involved in this lawsuit) did receive most of

their payments for the work. However, I received only about $800.00 total for the additional work.

17. When the defendants did pay me for my work, they often paid me at least two or three weeks after the end of a work week, rather than weekly. I complained repeatedly to the defendants and/or their agent(s) about the late payments, but the late payments continued.

18. Even though, on each weekday from August 1 through December 20, 2006, I worked for more than 10 hours, I never received any extra payments for working those long hours.

19. I didn't receive any pay at all for my work from November 29 through December 20, 2006, even though I worked seven days a week during this time period performing my primary work during the weekdays and my additional work during the evenings and weekends.

20. On December 20, 2006, I finally quit my job because I was not being paid for my work.

21. During the entire time that I worked at the construction site, the defendants supervised my work. Sometimes, Mikial or Musa would come to the worksite and tell us what we should be doing. Also, "J.L.," a foreman for BNI Construction, supervised us on a daily basis. He would tell us when and how Mikial and Musa wanted us to do particular tasks. Most of the times when we got paid, it was Mikial who paid us for our work, whether it was our weekday "primary" work or our evening/weekend "additional" work. The defendants also provided the materials needed to perform the work.

107591.1

22. The defendants were aware of all of the work that I performed, as they occasionally came to the worksite and approved of the various tasks that I was performing, and since J.L., their foreman, supervised me on a daily basis.

23. The defendants never provided me with any statements of payment of wages.

24. The defendants never provided me with any notice of their policies regarding the payment of wages and/or benefits.

25. There was nothing posted at my work site regarding the New York minimum wage.

26. As far as I know, the defendants maintained no payroll records showing my hours worked, gross and net wages, and/or payroll deductions.

27. Throughout the entire time that I worked for the defendants, I was completely dependent on the wages that I received (or should have received) for that work as my means of supporting myself and my family. I had no employer(s) other than the defendants during that time, and I did not have any other source(s) of income besides my employment by the defendants.

28. The wages that defendants owe me are as follows: total wages due for unpaid wages, unpaid overtime, and unpaid spread of hours pay: $13,988.11; plus total liquidated damages: $10,433.86; for a total of **$24,421.97**. A spreadsheet showing how this amount was calculated is attached to the declaration of my attorney, Kerin E. Coughlin, that is submitted in support of this request.

29. I also make this declaration in support of my request for attorneys' fees and costs. In approximately June 2007, I retained Constantine Cannon LLP and the New York Legal Assistance Group to represent me in this proceeding. Records of my attorneys' fees and the costs incurred in this matter are attached to Ms. Coughlin's declaration.

- 6 -

WHEREFORE, I respectfully request that the Court grant my application for an Order granting me a default judgment against defendants and awarding me unpaid wages, overtime compensation and other amounts as well as liquidated damages, pre-judgment interest, and attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: September 9, 2008
New York, New York


_____
FERNANDO MARTINEZ